Calhoun vs. Lane et al.

## No. 9904.

### WM. S. CALHOUN VS. M. M. A. LANE ET AL.

It cannot be contested that a married woman, duly authorized thereto by her husband, has the right to compromise a lawsuit pending against her, or to make a transaction relative to her separate paraphernal property or estate, for the purpose of *preventing* a lawsuit appertaining thereto.

Such a compromise and transaction have, between the interested parties, a force equal to the authority of things adjudged.

In case brother and sister, who are sole heirs-at-law to an estate fallen to them by a deceased ancestor, compose their differences, and one sells to the other his or her share, the husband of the sister is a *nominal*, though necessary party, and his appearance therein does not convert it into a community covenant.

A married woman cannot be heard to set up the defense that the debt was her husband's, in a suit upon the compromise, after she has failed to make it in the previous suit, or withdrawn it in consideration of the advantages she secured by the compromise.

The *cases* suggesting that a married woman is *not estopped* from *attacking* her own judicial confession, are based *entirely* upon the supposition that such confession may have been induced by marital coercion.

Calhoun vs. Lane et al.

Outside of such cases, she may. under exceptional circumstances, not existing here, be permitted to *attack* a transaction that has received the sanction of her *husband only*, upon proper averments and proof of error as to the matters transacted, fraud, violence or duress, and perhaps of her husband's indebtedness.

This class of contracts is clearly distinguishable from that in which equivalents are exchanged. By the very nature of the agreement, the intention of the parties is the avoidance of litigation, even at the expense of what belongs to them.

A force equal to the authority of things adjudged is said of that which has been decided by a final judgment, from which there can be no appeal, either because the appeal did not lie, or because the time fixed by law for appealing is elapsed; or because it has been affirmed on appeal.

If extraneous proof were required. in support of a transaction entered into by a married woman, it could not be said to have a force equal to the authority of things adjudged. It would be thereby deprived of the character of an unappealable judgment and reduced to the rank of a conventional obligation. To decide that a married woman may, with the authorization of her *husband only*, enter into a transaction, is to decide that no extraneous proof is required to entitle interested parties to a judgment for the enforcement of it, upon its production and proof of its execution.

A PPEAL from the Twelfth District Court, Parish of Grant. Overton, J.

*Thorpe & Peterman* for Plaintiff and Appellant:

1. A married woman, authorized by her husband, can enter into a valid compromise of disputes and rights affecting her separate property. In a suit upon such compromise. if she fails to plead or prove that the debt was her husband's or the community's, or that the compromise was secured by fraud or forced under marital coercion, and offers no evidence on the trial, she is bound; and the creditor having shown that the compromise was properly executed, and had relations solely to her paraphernal property. can enforce the same. 26 Ann. 289; 37 Ann. 679.

2. The consideration named in a compromise is the foundation of the rule which gives to the compromise the authority of the thing adjudged. 23 Ann. 696,

3. Compromises are not of that class of contracts to which sales belong; therefore. a transaction entered into to end. litigation, strife and disputes in the family, although only a cession of rights and pretensions, has a good consideration, and is enforceable at law. 20 Ann. 248.

4. Where it is shown that a married woman owned large separate interests. and that she had compromised disputes relating thereto, the Court will not presume that they yielded no revenue, or were insufficient to justify her in executing the compromise. If this is her defense, she must allege and prove it. 16 Ann. 209; 34 Ann. 995-1063.

5. Parties to a compromise are not entitled to restitution, their intention in executing it being the avoidance of litigation, " even at the expense of what belongs to them." 1 Poth. Oblg. [35-36].

6. The fact that the husband is bound in nowise changes or lessens the wife's obligations. If the compromise is for the benefit of her separate property, it is binding on her, whether executed by herself or by her husband with her consent. 29. Ann. 749.

*R. J. Bowman, White & Thornton* and *J. B. Tucker* for Defendants and Appellees.

The declaration of plaintiff of the ownership of the defendant of his interest in the succession of his mother (except the portion in Pennsylvania), and his warranty and stipulation to defend said title and the defendant to pay $42,500 in consideration thereof, is a sale, and not a compromise.

Such a sale to a married woman on credit, without proof or means of revenue to make the purchase, is a contract of the community, for which she is not bound. 5 Ann. 173 ; 12 Ann. 663 ; 20 Ann. 220 ; 30 Ann. 1021 ; 34 Ann. 1065 ; 34 Ann. 975; 29 Ann. 75.

The instrument sued on does not claim the contract it contains to be a compromise ; neither is it claimed to be one in the petition, while the conveyance, by declaration of owner-ship, the warranty of title thus conveyed, and the price to be paid, are not the features or characteristics of a compromise, but are of a sale.

The sale of 1873, if real, proves too much, and estops the plaintiff from setting up claims and rights, and raising disputes about property that he has sold and warranted to defend. If a simulation, it strips the contract of its cloak of concealment, and exposes its true character, a sale.

A part of the consideration of the contract is the release or cancellation of claims against her husband, and poisons and nullifies the contract. 1 Ann. 301; 16 Ann. 310; 23 Ann. 439.

*Farrar & Kruttschnitt* on the same side.

The opinion of the Court was delivered by

WATKINS, J.   The plaintiff and defendant are brother and sister, and sole heirs-at-law of their deceased mother, Mary Smith Calhoun, who died in 1871.

Plaintiff alleges that, for a long time, there had been disputes and differences between them in regard to their respective rights and interests in their mother's succession, and that, in order to adjust and put an end to said claims, disputes and differences, and " *to perfect and quiet the title asserted* by defendant, in and to the property of the said succession," he and defendant made a written agreement, wherein he renounced and released to her all his right, title, interest and claim, of every kind and character, in all the property, movable and immovable, of whatever description and wheresoever situated, of their mother's succession ; and wherein she waived, renounced and released all claims, of whatever character and from whatever cause, against him ; and further agreed to pay and satisfy a certain judgment obtained against him for the capital sum of $5200, by L. L. Levy, to execute to his daughter a donation to a five hundred acre tract of land, and to pay him, in addition, $17,500.

This agreement bears date December 23, 1882, and the signature of defendant was duly authorized by her husband.

Petitioner represents that he has fully complied with his part of the agreement in good faith, but that defendant has wholly failed and re-fused compliance therewith, and this suit is brought for its enforcement.

Plaintiff's contention is that the said agreement evidences a transac-tion and compromise having the force of *res judicata* while, on the other hand, defendant's contention is, it was a contract of the commu-nity existing between the defendant and her husband, G. W. Lane, for

which defendant, a married woman, could not be held responsible—that one of its covenants seeks to bind her jointly with her husband, for the payment of the Levy judgment; and that a part of the pretended consideration of said contract was the cancellation of the obligation of her husband; and both in violation of a prohibitory law.

Defendant's counsel argue that the agreement evidences a sale to a married woman and not a transaction or compromise; that she was unauthorized in law to bind herself for the payment of so large a sum, without adequate means to discharge the same, and that the contract was, without consideration, for more than $30,000.

### I.

The issue must be determined by the proper construction to be placed upon the agreement.

The record discloses that, on the 23d of June, 1873, plaintiff and defendant were recognized as the sole heirs-at-law of their mother, Mary Smith Calhoun, deceased widow of Meredith Calhoun, from whom she was separate in property; and by a decree of the Probate Court they were placed in possession of her property and estate.

At that date defendant was of full age, unmarried and *sui juris.*

They accepted her succession unconditionally.

The agreement sought to be enforced contains, substantially, the recitals of fact set out in the petition.

The first paragraph declares that defendant "*is* the true and lawful owner of, all and singular, the property formerly owned by his mother, Mary Smith Calhoun, deceased, both real and personal." It further declares that plaintiff releases and renounces any and all right, title or interest in any property therein referred to, and all claims against his sister and against her husband, *if any be, may, or might have been*," whether arising from, or out of said property, or any portion thereof, in any manner whatever, either as heir or legatee of Judge William Smith, his grandfather; Mary S. Calhoun, his mother; or Meredith Calhoun, his father, or otherwise, binding himself "to warrant and defend the title and ownership which his sister *now has and enjoys* in and to the property before referred to."

In the second paragraph the defendant voluntarily and fully releases any and all claim against the plaintiff, "whether arising from, or out of, his management of any of the property aforesaid or the revenues thereof; or from or out of his management of the property formerly owned by Meredith Calhoun, their father, or the revenues thereof; or from or by reason of any debts, expenses, law charges, or other

expenses named or paid for his account, or from any and all other sources whatever," etc.

These two paragraphs are mainly relied upon as indicating the character of the differences and disputes that the parties, by their agreement, composed and adjusted.

In the third paragraph the defendant binds herself to pay and satisfy the Levy judgment against the plaintiff of $5250, with interest.

In the fourth paragraph she obligates herself to make a donation of "five hundred acres of land to plaintiff's daughter." The land is particularly described and indicated thus : "A part or portion of said lands *is now* claimed as the property of the succession of Meredith Calhoun, having been advertised for sale therein, and said sale has been enjoined by said Mrs. Lane; and which suit she declares she will prosecute to a successful termination; and, if unsuccessful, that she will purchase said land at the succession sale, in order to perfect the donation; or, on her inability so to do, she promises to make a donation to his said neice of five hundred acres of land of *equal value.* The formal act of donation, before a notary, shall be executed and signed whenever W. S. Calhoun desires," etc.

There is no valuation placed, by the agreement, on the land that is to be donated.

This paragraph indicates a reason why the plaintiff transfers to his sister his interest in the succession of his father, Meredith Calhoun, and that is to enable her to complete the proposed donation.

In the fifth paragraph, defendant's pecuniary obligations are expressed.

" For and in consideration of the *acknowledgments,* declarations and agreements made by the said W. S. Calhoun, as aforesaid, and in order to secure peace and a final termination of all possible disputes present and future," defendant agrees to pay to the plaintiff $17,500—that is to say, $10,000 in cash within forty-five days, and for the remainder of $7,500 to execute her note, secured by mortgage, due at twelve months·

## II.

There was introduced in evidence, on the part of plaintiff and in connection with the agreement, what purports to be an act of sale, whereby plaintiff, on the 27th of May, 1873, conveyed to his sister, his interest in his mother's succession, which is differently construed by counsel, and should be considered in connection with the agreement.

It is six days prior in date to the order of court placing them in possession of their mother's succession.

An examination of that act shows that plaintiff did convey, with full warranty to his sister, the defendant, his interest in his mother's succession for the express consideration of $35,000, in cash paid.

At that time, it appears the defendant was of full age and unmarried, and therefore fully capable of making the contract.

The act was executed before A. Hero, a notary in this city. The property, with the exception of the plaintiff's interest in the successions of his father and grandfather, is identical with that which is described in the agreement, and *acknowledged* therein to be the property of defendant. The agreement in terms recites that the defendant "is the true and lawfull owner of all and singular the property formerly owned by his mother, Mary Smith Calhoun."

The only essential difference between the act of sale and the agreement is in respect to the consideration.

In the former it is mentioned as *cash* ; while in the latter it is differently specified, as above recited, viz:

Satisfaction of the Levy judgment for $5,250, with accumulated interest, and in cash and note $17,500.

There is no valuation placed upon the five hundred acres of land to be donated. Nothing is said in the agreement upon that subject. The consideration that is expressed in the act of sale is $35,000, an equal, if not greater, amount than defendant promises to pay in agreement.

The only legitimate conclusion we can arrive at is that the act of sale of May 27, 1873, was recognized by the agreement, and all differences and disputes between the parties appertaining thereto or growing out of same, were therein adjusted and composed; and, that the consideration that was specified in the act of sale as *cash*, was explained and arranged to suit defendant's circumstances.

### III.

Assuming the agreement to be a sale and not a compromise, defendant's counsel further argues that it is void, for the reason that a married woman is not permitted to purchase property on terms of credit on her separate account, unless she is possessed of adequate means to discharge her obligations from her own resources.

While that is true, as a general proposition, the principle is not properly invoked here. We have already ascertained that the agreement is not a sale; but, it is one in which the *previously* existing title of defendant is recognized and affirmed. We have also ascertained that the defendant acquired her title after her full majority, but prior to her marriage—hence there was involved, in its acquisition, no ques-

tion of marital restraints or authority. In the answer of defendant's present counsel, he challenges the validity of the consideration for the agreement *beyond* the sum of $30,000. Impliedly he admits that to be a fair valuation of plaintiff's interest. In our view, the defendant's obligations are less than that amount. But on that basis she became possessed of property worth $60,000—including her share—and which was certainly adequate to the *paraphernal* acquisition.

## IV.

A further argument is made to the effect that plaintiff released and abandoned all claims upon the *property* referred to as against his sister and against her husband, " if any he *may* or *might* have," and bound himself "never to make demand, call upon or prosecute his said sister, her husband, or their heirs, *for an account relating thereto ;*" and, therefore, the whole agreement is tainted with illegality and cannot be enforced: It is difficult to conceive what claim plaintiff could have had against defendant's husband on account of his mother's succession or property. But it is a sufficient answer to say there is no proof furnished by the agreement or otherwise of any debt or demand the plaintiff had against the defendant's husband ; and, inasmuch as both plaintiff and defendant were of full age in 1873, when they accepted their mother's succession unconditionally, no account was due the defendant.

We regard those as precautionary recitals in the act, and exercising no control over its general effect.

The act of sale was doubtless introduced by plaintiff as adjuvatory to, and as a basis for the agreement of compromise—to show the *status* of the parties thereto with respect to each other at the time it was made—and to indicate the relations existing between the title and the agreement itself.

## V.

It cannot be contested that a married woman has the right to compromise a law suit pending against herself, or to make a transaction for the purpose of preventing a law suit against herself ; and transactions have, between the parties, a force equal to the authority of things adjudged. 26 Ann. 289, Barion vs. Solibellos ; 37 Ann. 679, Sentell vs. Dora Stark ; 34 Ann. 1171, Thornhill vs. Bank ; 37 Ann. 324, Chaffe vs. Watts ; 20 Ann. 248, Davis vs. Lee ; 23 Ann. 696, Roburn vs. Pierson ; R. C. C. 3071, 3073, 3078.

The agreement appertains exclusively to the defendant's *separate* property. It is a compromise between two forced heirs to the succession of their mother, and had its foundation in a sale made ten years before and prior to the defendant's marriage.

Calhoun vs. Lane et al,

On its face the consideration appears to be just and adequate, and its sufficiency has not been assailed or questioned here, except in argument and pleading.

The defendant appeared and signed the act in the presence of her husband, who signed with her, and her counsel, F. W. Baker, who also signed, attesting.

There is, in our opinion, no question of the validity of the agreement, and plaintiff is entitled to the enforcement of it.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be avoided, annulled and reversed; and proceeding to render such judgment as should have been rendered by the court a qua, it is ordered, adjudged and decreed that the agreement sued on be recognized and enforced, and that the plaintiff and appellant do have and recover of the defendant and appellee the sum of ten thousand dollars, with five per cent interest from judicial demand; that defendant be required to execute her note and mortgage in favor of plaintiff for the further sum of seven thousand five hundred dollars, with interest and mortgage, as stipulated in the agreement sued on; that she pay and discharge the Levy judgment of $5200 and interest, and execute the donation to plaintiff's daughter of the land described, or that of equal value, and according to the terms and stipulations of the agreement; and that all costs of both courts be taxed against said defendant and appellee.

## On Rehearing.

We are requested to review and recast our opinion, upon the following grounds, viz:

1st. Because there is no evidence of the existence of disputes and differences other than the recitals of the act, and they are insufficient to bind a married woman.

2d. "If the contract sued on is, as the *court* terms it, a *sale* of plaintiff's interest in his mother's succession, it cannot be a compromise."

3d. If the contract could combine both a sale and a compromise, the portion resting upon the nature of a sale, could not bind a married woman.

4th. The plaintiff having proved the validity of the sale of 1873 to the defendant, he is estopped from disputing it; and, as warrantor, he is estopped from raising disputes and claiming rights growing out of said property, and a compromise based upon such a consideration is a nullity.

5th. Because, if the court holds that the act of sale of 1873 is a simulation, then the contract *is* a sale, pure and simple, to a married woman not separate in property and upon terms of credit beyond her means.

6th. Because the court erred in supposing the husband to be a merely nominal party to the contract.

The issues tendered by defendant's answers are the following, viz:

1st. A general denial, coupled with the averment that plaintiff disclosed no legal right "upon the face of the papers" to bring him into court.

2d. That the agreement sued on evidences a community contract.

3d. That she is sought to be bound jointly with her husband for the Levy judgment.

4th. That part of the consideration of the agreement is the cancellation of her husband's obligation.

5th. That the agreement is a simulation and null *upon its face.*

On the trial the defendant was not sworn as a witness, and her counsel introduced no evidence. Hence none of her defenses are made out.

The agreement shows upon its face a *prima facie* right in plaintiff to bring the defendant into court.

It does not, in its recitals, evidence a community contract. They do not show that her husband's obligations enter into its consideration. It contains no inherent proof of its simulation. The Levy judgment is against the *plaintiff*, and there is no legal prohibition against the defendant's husband binding himself cojointly with her for its payment, to a stranger.

Recurring to the defendant's application for a re-hearing, we find, in our opinion, no warrant for the assertion that it construed the agreement to be a sale; or, as one partaking of both the nature of a sale and a compromise. The record does not disclose any evidence to justify the inference that plaintiff denies or disavows the title of 1873; or that *he* raised the disputes and differences concerning it. We gave no intimation to the effect that the sale of 1873 was a simulation —though the defendant and her counsel assert it was—and our inference that defendant's husband was only a nominal party, was drawn from the *want* of proof, of any kind, that he was an interested party. The opinion is plain and unmistakable.

It reads thus: " The agreement appertains, exclusively, to defendant's *separate* property. It is a compromise between two forced heirs to the succession of their mother; and had its foundation in a sale made ten years before, and prior to the defendant's marriage.

"On its face the consideration appears to be just and adequate; and its sufficiency has not been assailed or questioned here, except in argument and pleading. The defendant appeared and signed the act, in the presence of her husband, who signed with her and her counsel, F. W. Baker, who also signed, attesting."

The opinion further holds that a married woman has the incontestable right to compromise a law suit that is pending against herself, or to make a transaction for the purpose of *preventing* a law-suit being brought against her; and that transactions have a force equal to the authority of things adjudged.

The only remaining question for consideration is whether or not *extraneous* proof of differences and disputes should have been adduced, in order that a transaction or compromise should have binding force and effect upon a married woman, authorized by her husband alone, though not separated from him in property.

Defendant's counsel say, in their brief: "We plant ourselves upon the position that there is not, in this case, that *quantum* of evidence, adduced by the plaintiff, to authorize the Court to render a judgment against a married woman, on a contract signed conjointly with her husband, without the authorization of the judge. The whole case turns upon this question."

Further: "There is no doubt about the power of a married woman to enter into a compromise. A compromise is only one form of *contract*, which any person with power to alienate the thing with reference to which the compromise is made, can enter into. She has the option, unless the other party objects, to enter into such a contract of compromise, solely with the consent of her husband." But the other party "accepts a contract which imposes upon him the burthen of proof to show that the compromise was for the separate use of the wife."

It is a well established principle—one deeply imbedded in our jurisprudence—that he who sues a married woman upon a contract, or obligation, must show by proof administered that the "contract *turned* to her advantage"—or inured to her separate benefit. We do not understand that this rule obliged the plaintiff to administer proof to establish the verity of the contract, or the sufficiency of the consideration of the written instrument; but it does oblige him, by some evidence, to show that an established contract "turned to her advantage."

Defendant's counsel contend that in neither Barron vs. Sollibellos, nor Sentell vs. Stark, were the recitals of the act held sufficient proof of a transaction; but that proof *aliunde* was administered for the purpose of establishing it.

In the former case, Mrs. Barron enjoined the execution of a judgment she had confessed, upon the double ground that the obligation was one of her husband's and that it did not inure to her benefit.

The Court say: "The simple question presented is, can a married woman compromise a lawsuit pending against herself? We apprehend no one will dispute her right to do so. And ' transactions have, between the interested parties, a force equal to the authority of things adjudged.' It is difficult to imagine how it can be pretended that money loaned by Solibellos for the purpose of enabling the compromise to be effected, did not inure to her benefit. *Nor can she be listened to* when saying that the debt, on which Miltenberger has sued her, was the debt of her husband; for, by the compromise, they agreed to put an end to that lawsuit, to adjust their differences by mutual consent in the manner which they agreed on, and which each party preferred to the hope of gaining balanced by the danger of losing. The injunction was improvidently maintained." 26 Ann. 289.

In the latter case plaintiff sued Mrs. Dora Stark on several mortgage notes that she had executed in pursuance of an act of compromise of a lawsuit, and her defense was that the debt was her husband's, and marital coercion. The Court say: "That a married woman can compromise a pending lawsuit against herself, has been decided in Barron vs. Solibellos, where the facts were very similar to those in the case at bar, and *she cannot be heard to set up the defense that the debt was her husband's, in a suit upon the compromise,* after she has failed to make it in the previous suit, or withdrawn it, in consideration of the advantages she secured by the compromise.

"If a married woman, under such circumstances, can go behind her own judicial admissions and repudiate them, she will have immunity that the law has not conferred upon her.     *     *     *     *     *

"We think the defendant has no escape from the payment of the obligations, and that the judgment in her favor is error." 37 Ann. 1171.

In Thornhill vs. Bank, suit was brought to *annul a judgment* rendered in pursuance of a compromise on various grounds, and among them that it was the husband's debt. The Court say: "The authority of a married woman to make a compromise, with the authority of the husband, has been judicially determined in Barron vs. Solibellos, 26 Ann. 289.

"The effect of the compromise and of the judicial proceedings based thereon, was only to effect that which the plaintiff would have had the unquestioned right to do, assuming that the debt was her

separate debt, viz: to subject her separate property to the payment thereof.

"Can the plaintiff be heard to deny that the debt did inure to her separate benefit? We think not. She was a party to the suit in which the judgment assailed was rendered, and she judicially confessed the fact.

"The cases suggesting that a married woman is *not estopped from attacking her own judicial confession are based entirely* upon the supposition that such confession may have been induced by *marital influence*," etc.

Instead of the court holding that extraneous proof was necessary, they declined to hear and consider such evidence in those cases. Instead of holding that proof should be administered to establish that the debt inured to her advantage, they say that the only reason that a married woman is estopped from *attacking* her judicial confession is based upon the supposition of marital influence. We have no such allegation here. On the contrary, the defendant's husband appeared as her counsel and filed her first answer, and his act was not subsequently repudiated.

In the last decided case—Sentell vs. Stark—defendant plead in her answer marital coercion and non-liability for her husband's debt; but she failed to substantiate the former and the court would not listen to the proof of the latter.

As illustrating the view taken of this subject, an early case may be quoted, in which it was said: "The wife was bound by the note which she executed jointly and severally with her husband; although, if the debt for which it was given was her husband's alone, and she merely a security, she could have resisted the execution of the amount by availing herself of her exception to such a contract resulting from her condition as a married woman. But having made the exception, and no' *fraud, restraint,* or *duress* having been charged to be exercised *in relation* to her *non-appearance* after citation, the *judgment against her must be considered as valid.*" 2 Ann. 342, Aubic vs. Gill.

In 23 Ann. 314, Darcy vs. Martin, the court sanctioned the right of a married woman to enjoin the execution of a judgment she had confessed with the authorization of her husband, on the grounds of error, fraud and marital coercion and restraint.

Similar rulings were made in 28 Ann. 839, Strother vs. Hamlet; 15 Ann. 628, Baines vs. Burbridge; 15 Ann. 621, Medart vs. Fasnach; 34 Ann. 1065, Succession of Andrus.

But to show how guarded this Court has been in admitting married

women to urge such defenses against judgments, we have noted the striking language employed by our immediate predecessors in treating of them:

"And that principle has been carried so far that the wife is permitted to sue to annul and to enjoin the enforcement of a judgment she has confessed." 30 Ann. 1024, Sara Bowman vs. Kaufman.

The Code teaches that a transaction or compromise is an *agreement* " between two or more persons who, for *preventing* or putting an end to a lawsuit, adjust their differences by *mutual* consent, in the manner which they agree on, and which one of them prefers to the hope of gaining balanced by the danger of losing." R. C. C. 3071.

A transaction is an *agreement* of two or more parties. *It has for* its object the prevention or termination of a lawsuit between the parties. It is an adjustment of differences and disputes by mutual consent. This adjustment is preferred to the hope of gaining balanced by the danger of losing.

It was well said in Raburn vs. Pierson, that the law which gives to " the transaction the authority of the thing adjudged is founded upon the maxim that it is for the interest of the commonwealth that there should be an end to litigation." 23 Ann. 696.

This class of contracts is clearly distinguishable from that in which equivalents are respectively given and received.

It was correctly observed by our predecessors that " in transactions, as they are defined in the Code and in the Roman law, there is, from the nature of such contracts, something aleatory." 20 Ann. 248, Davis vs. Lee.

Pothier, in writing on the subject, employs this language: " There are certain agreements in which persons of full age are *not* entitled to restitution, be the injury ever so considerable. Such are compromises according to the edict of Francis II. These are agreements respecting pretensions upon which there are *impending or expected litigations.* * * * By the very nature of such agreements, the intention of the parties is the avoidance of litigation, even at the expense of what belongs to them." 1 Pothier Ob., p. 121 (36).

The Code declares that a transaction has " between interested parties, a force equal to the authority of things adjudged," and that " they cannot be attacked on account of error in law or *any lesion.*" R. C. C. 3078.

In *Long* vs. *Robinson,* suit was brought to annul a transaction on the ground that there was great inequality in their respective shares and interests, and the Court held that such a claim was unfounded, and

declined to listen to evidence in support of it. What is "a force equal to the authority of things adjudged?"

"A thing adjudged is said of that which has been decided by a final judgment, from which there *can be no appeal*, either because the appeal did not lie, or because the time fixed for appealing is elapsed; or because it has been affirmed on appeal." R. C. C. 3556, No. 31.

If, then, as learned counsel admit, "there is no doubt of a married woman's right to enter into a compromise," or to make a transaction, "solely with the consent of her husband," we submit, on the authorities cited, that his question must be answered in the negative.

There is no precept of the law that requires evidence to support an act or compromise. This would of itself destroy its effect as a transaction. It could not then be said to have a force equal to the authority of things adjudged. It would then be deprived of its character as an unappealable judgment, and reduced to the rank of conventional obligations and commutative contracts. If it be necessary to prove *aliunde* that there was an *adequate* consideration, then it would *eo instanti* cease to be a compromise. If proof is necessary to show that the contract turned to her *advantage*, the provisions of the Code would be violated, and by its reception the jurisprudence would be trenched upon.

Both the Code and the decisions quoted clearly indicate what defendant's remedy and redress are. If there was error in the matters that were transacted, or, if fraud, violence, duress, marital coercion, or restraint were resorted to; or possibly upon proof that the debt did not enure to her separate estate, or was, in fact, that of her husband, she might have been relieved; though it is unnecessary to decide that question now, because there is no averment of marital coercion, or restraint; and no proof whatever of any of the charges we have enumerated. And, in maintaining the transaction in the instant case, we have not gone to the extent of the doctrine that was announced in *Aubic* vs. *Gill*, above cited.

We have given the questions involved most patient and careful consideration, and feel satisfied that the conclusions announced in our opinion are founded in reason and on authority, and we shall adhere to them.

It is, therefore, ordered, adjudged and decreed that our original opinion and decree remain undisturbed.

Mr. Justice Poché takes no part, and assigns his reasons.

POCHÉ, J. My examination of this case, on the application for re-

hearing, had led me to the conclusion that our original opinion was erroneous, and that owing to the lack of evidence on the part of plaintiff, to support his claim, the judgment should have been one of nonsuit. I adhere to that opinion; but as I was prevented by sickness from hearing the argument of counsel on rehearing, I take no part in the present opinion and decree.