(63 South. 880.)

No. 19,520.

FRANCOIS v. MAISON BLANCHE REALTY CO. et al.

(Nov. 3, 1913. Rehearing Denied Jan. 5, 1914.)

*(Syllabus by the Court.)*

1. COMPROMISE AND SETTLEMENT (§ 5*)—FORM OF AGREEMENT—NECESSITY OF WRITING.

Compromises must be reduced to writing and signed by both parties when they contain covenants of future performance.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 10–16; Dec. Dig. § 5.*]

2. COMPROMISE AND SETTLEMENT (§ 5*)—REQUISITES—COMPLETENESS.

A compromise must be complete in itself, and nothing left to be established by parol proof.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 10–16; Dec. Dig. § 5.*]

3. MASTER AND SERVANT (§ 286*)—INJURY TO SERVANT — NEGLIGENCE — QUESTION FOR JURY.

Where plaintiff was severely injured by the fall of a scaffold on which he was working, the questions whether the scaffold was properly constructed, and whether the fall was due to overcrowding of the scaffold by workmen, are primarily for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

4. APPEAL AND ERROR (§ 1002*) — VERDICT—CONFLICTING EVIDENCE.

In such a case, the verdict of the jury in favor of the plaintiff will not be disturbed, where the evidence is conflicting, and the finding does not appear to be against the preponderance of the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

5. APPEAL AND ERROR (§ 1151*)—DECISION—INCREASE OF VERDICT FOR DAMAGES.

The amount of a verdict for damages will be increased when clearly insufficient for the purposes of justice.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4498–4506; Dec. Dig. § 1151.*]

*(Additional Syllabus by Editorial Staff.)*

6. EVIDENCE (§ 265*)—ADMISSION TO PROCURE—ESTOPPEL—MASTER AND SERVANT.

An injured employé's admission that the employer was not responsible for the accident, when made with a view to a compromise, did not estop the employé from recovering for his injuries.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1029–1050; Dec. Dig. § 265.*]

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by Ferdinand Francois against the Maison Blanche Realty Company and another. From judgment for plaintiff, one defendant appeals, and plaintiff prays that the amount of the judgment be increased. Judgment ordered increased, and, as thus amended, affirmed.

Solomon Wolff, of New Orleans, for appellant. Teissier & Teissier and John D. Nix, Jr., all of New Orleans, for appellee.

LAND, J. This is a suit for damages for personal injuries alleged to have been sus-

tained by the plaintiff while working for the defendants. The petition alleges, in substance, that on August 20, 1910, he was employed by the defendants to knock off plaster from the ceiling of the Maison Blanche Building, and in order to do so it was necessary for him to stand on a scaffold, which had been erected by the defendants; that after working on the scaffold about an hour, it broke and fell under the combined weight of himself and several other workmen; that the scaffold fell because it was constructed of inferior materials and the parts thereof were insecurely nailed and improperly braced; that the structure was erected in a thoroughly unworkmanlike manner, and that as the direct result of his fall he sustained a fracture of his right ankle, with a rupture of the ligaments, and a severe strain, producing a permanent injury to his right foot to such an extent as to disable the plaintiff from walking without crutches; and that plaintiff's back was severely wrenched and bruised.

Plaintiff sued for actual and punitive damages to the amount of $7,202.47, with interest and costs.

The petition further alleges that, on August 26, 1910, the plaintiff, while still suffering intensely from his injuries, signed the following writing, presented by some representative of the Maison Blanche Company, to wit:

"New Orleans, August 26th, 1910.
"For and in consideration of $10.00 weekly until able to take position, for injury sustained, I hereby accept the same for payment and settlement in full of any claim or claims of any nature whatsoever, that-I may have against the Maison Blanche Company, in connection with accident resulting to my ankles and back.
"I fully understand and accept the above payment to me by the Maison Blanche Company as a mere matter of courtesy and that the Maison Blanche is in no wise responsible for the accident or the payment above referred to.
"[Signed]        Firdeon Francois.
                    "332 Villere St."

The petition alleges that the Maison Blanche Company paid the plaintiff $10 per week for 15 weeks, and then refused to make any further payment, and that the plaintiff, prior to the filing of suit, tendered to said defendant the sum of $150, in manner and form provided by law, and that the Maison Blanche Company refused to accept said tender.

The petition alleges that said writing should be declared of no effect, because not signed by the Maison Blanche Company, and not binding on it because based merely on "courtesy," because the plaintiff, at the time, was suffering so intensely that he did not have the capacity to enter into a contract, and lastly, in the alternative, that the Maison Blanche Company had broken the contract by refusing to continue the payments.

For answer, the Maison Blanche Realty Company pleaded the general issue.

The Maison Blanche Company after pleading the general issue, and after averring that if the plaintiff herein was at all injured, he was so injured through his own fault and negligence, or through that of a fellow servant, pleaded as follows, to wit:

"Respondent further avers that the plaintiff herein is estopped from alleging the liability of this respondent, because of the execution by him of the agreement of compromise and settlement set out in plaintiff's petition and all the allegations thereof, and especially plaintiff's admission wherein the plaintiff especially acknowledged and admitted that this respondent was in no wise responsible for the accident by which the alleged injuries were suffered."

The jury by a vote of 9 to 3 found the following verdict, to wit:

"We, the jury, find for the plaintiff in the sum of two thousand dollars ($2,000.00)."

Judgment was rendered against both defendants, but as rendered was never signed, because of the discontinuance of the suit as to the Maison Blanche Realty Company. The judgment as signed was against the Maison Blanche Company alone, and the defendant has appealed. Plaintiff has an-

swered the appeal, and prayed that the amount of the verdict and judgment be increased to the sum demanded in the petition.

[1, 2] The so-called agreement of compromise is sui generis. The Maison Blanche Company did not sign the instrument. The text of the so-called agreement does not bind that company to make the weekly payments referred to in the first paragraph, and the second paragraph makes it clear that the Maison Blanche Company made the payment of $10 "as a mere matter of courtesy." Money paid as a matter of courtesy cannot be considered otherwise than as a gratuity. As the Maison Blanche did not bind itself to pay the consideration expressed in the instrument, it is obvious that there was no contract of compromise between the parties. Such a contract must be reduced into writing. Civil Code, 3071. It must be complete in itself, and nothing left to be established by parol proof. Lampkins v. Railroad Co., 42 La. Ann. 997, 8 South. 530.

The instrument on its face is an ex parte writing, which does not bind the Maison Blanche Company, and as against the plaintiff, shows that he received $10 paid by said company as "a mere matter of courtesy." If the instrument had recited the payment of a specific sum of money in full satisfaction of all of plaintiff's claims against the defendant for injuries sustained by reason of the accident in question, such recitals, doubtless, would estop the plaintiff to deny that such claims had been compromised and settled. But where, as in this case, one party proposed a compromise calling for weekly payments for an indefinite period, and the other party did not sign the instrument, the agreement remains inchoate and ineffective. The instrument in question was prepared by the defendant company and the second paragraph shows that the company did not intend to *obligate* itself to make the weekly payments. The first payment was made "as a mere matter of courtesy," and it is to be presumed that subsequent payments were of the same character. The evidence shows that the weekly payments were discontinued before the plaintiff was able to take the position of porter in the Maison Blanche store, which he filled at the time of the accident.

[6] The contention of the defendant that the plaintiff is estopped by the *admission* that the Maison Blanche Company was in no wise responsible for the accident is without merit. Such admission was made with a view to a compromise and forms part of the inchoate agreement of compromise hereinbefore set forth.

### On the Merits.

[3] We make the following extract from defendants' brief:

"It will appear abundantly from the evidence of all parties that the plaintiff, together with others, was employed to knock off the plastering from the ceiling in the store of the Maison Blanche Company, located on the lake corner of Canal and Dauphine streets, in this city; that the ceiling is very high, about 30 feet, and so that the workmen could reach it, a platform had been erected about seven feet below the ceiling. On this platform the men stood, and with short crowbars, or other like tools, knocked down the plastering.

"The ceiling is divided into what the witnesses call panels, about 9 by 12 feet, the division into panels being by beams which carry the ceiling.

"A portion of the platform gave way, several men were precipitated to the floor beneath, among them the plaintiff, who sues to recover the damages caused him by the injuries which he received in the fall."

Defendant contends that the direct cause of the falling of the scaffold was the breaking of a ledger or stringer, a piece 2x6 inches, running from one upright to another, and supporting the flooring above, which was 2x8 inches, and not by the breaking of an upright 4x4 as testified to by a witness for the plaintiff. Defendant further contends that the platform was amply strong for all purposes, but was not strong enough to support the 12 or 15 men who, despite of warn-

ing, gathered in the small space under one of the panels.

Plaintiff contends that one of the uprights broke at a point where there was a knot; that the material used was inferior; that a short upright resting on a show case was not nailed or braced; that there were only from 6 to 10 men working on that particular panel when the scaffold fell; and that a properly constructed scaffold would have held from 15 to 25 men at that place.

The breaking of the upright or ledger, as the case may be, was due to the use of defective material, or to faulty construction, or to the overloading of the structure. Defendant's evidence as to the last-mentioned cause is not very satisfactory. One of its experts testified that the scaffold should have held 15 or 20 men at the place where the plaintiff was working. Another expert fixed the number as from 20 to 25 men. The defendant's chief foreman testified that the scaffold was built to hold 4 men to each panel, or say, 12, at the place of the fall.

Witnesses for defendant estimated the number of men present on that part of the scaffold at from 10 to 15. Plaintiff's witness Vallon, the subforeman, fixed the number of men present at from 10 to 12, and two other witnesses for plaintiff at about 6.

On such evidence we are unable to say that the scaffold in question was overloaded at the place where it collapsed. A properly constructed scaffold should allow a sufficient margin for safety. Vallon, the subforeman, was present on this part of the scaffold, and it was his duty to prevent overcrowding, and if he did not do so, his negligence must be imputed to the defendant. Vallon testified that one of the uprights broke by reason of a knot, a fact which he ascertained by an inspection made immediately after the accident. As no other person made a similar inspection, this testimony was not directly contradicted. The same witness testified to the slipping of a short upright which was placed on a show window and not safely secured. The credit to be attached to Vallon's statements was a question for the jury to decide.

[4] On the evidence, as a whole, we are not prepared to say that the verdict of the jury on the question of defendant's negligence is erroneous.

Plaintiff prayed for judgment in solido against both defendants. Counsel for the Maison Blanche contends that the verdict below and the judgment as rendered were against the two defendants jointly, and that the judgment as signed was against the Maison Blanche alone. Appellant made no objection below to the judgment as signed. As the appellee has prayed for an increase of the judgment to the full amount claimed, and as this court, if the judgment below is erroneous, is bound to render such judgment as should have been rendered in the first instance on the law and facts of the case, we cannot perceive how the alleged error below can affect our decision of this appeal.

[5] The last question is as to the quantum of damages. Dr. Gilbert describes the injuries sustained by the plaintiff as a fracture of the arch of the foot, the main bone forming the support of the ankle, which was mashed or broken down, and as a rupture and laceration of the ligaments. Dr. Gilbert treated the plaintiff for about eight months, and testified that the injury to the ankle was permanent, and that plaintiff could not take any job where he had to walk or get around. Dr. Nix confirmed Dr. Gilbert as to the nature and permanency of the injury. This witness testified that the fall had greatly impaired the relation of the bones of the foot to such an extent that they had dropped down flat on the ground.

The plaintiff is not entitled to exemplary damages. His injuries, however, were painful, serious, and of a permanent nature. For

all practical purposes, plaintiff has lost the use of his foot, and can no longer pursue his ordinary calling of all-around worker, or any other vocation requiring physical activity. Under the facts and circumstances of the case, we are of opinion that the damages should be assessed at $5,202.47 as claimed, less $150 received under the so-called compromise, or in the net amount $5,052.47.

It is therefore ordered that the judgment below be increased from $2,000 to $5,052.47, and that as thus amended be affirmed at the appellant's costs in both courts.