180 La. 535

### TEXAS CREOSOTING CO. v. R. B. TYLER CO.
No. 32761.

Supreme Court of Louisiana.
July 2, 1934.

Rehearing Denied Oct. 2, 1934.

Cline, Thompson & Lawes, of Lake Charles, for appellant.

Hawthorn, Stafford & Pitts, of Alexandria, for appellee.

LAND, Justice.

Texas Creosoting Company sues on a claim for damages assigned to that company by the Midland Construction Company, subcontractor of R. B. Tyler Company, contractor for the road or bridge work or both with the Louisiana highway commission for state project No. 4906.

Plaintiff company avers that the claim of damages assigned to it is based upon the failure of R. B. Tyler Company, contractor, to pay Midland Construction Company for the part of the work first done under its subcontract, and also upon the action, over its protest, of the contractor, in taking over and completing the work, under a more favorable amended or new contract, after failing to pay the subcontractor for the work previously done.

The damages claimed, as per itemized statement attached to plaintiff's petition, total $29,901.03, with 5 per cent. per annum interest from judicial demand.

R. B. Tyler Company, defendant, pleaded what it terms an act of compromise in estoppel and as res adjudicata as to the matters and issues raised in plaintiff's petition. This plea was sustained, and plaintiff's suit was dismissed, "with reservation of whatever right it has or may have under the instrument dated July 30th, (1932), attached to defendant's answer and marked, 'Defendant 1.'"

From this judgment, plaintiff has appealed.

The instrument above referred to is the purported act of compromise upon which defendant, R. B. Tyler Company, relies, and is in words and figures as follows:

"Alexandria, Louisiana.

"July 30th, 1932.

"Midland Construction Company, Clarksdale, Mississippi. Gentlemen: With reference to our contract for projects 3400, 1602, 6701 and 4906, there has been agreed as follows:

"The settlement of projects 1602 and 3400 has been satisfactorily concluded in accordance with the statement furnished you and which shows a balance due you of $322.79, on project 1602 and an overpayment of $109.68 on project 3400.

"The settlement on 6701 has been agreed in accordance with your statement showing the amount due us to be $726.75.

"With respect to a settlement on project 4906, we have agreed as follows. We are to pay you as shown by the revised estimate of the Resident Engineer the full amount allowed on all the items with the exception of Item #81, creosoted timber and Item #92, creosoted piling. On these items it is agreed that you will absorb the percentage of the total loss of the creosoted material on projects 4906 and 6701 in the proportion that the quantities allowed on project 4906 bear to the amount allowed in 6701.

"An effort is now being made by contractors holding contracts in the State of Louisiana to collect from the State Highway Department for losses suffered by themselves, because of idle equipment and overhead expenses during the period of full or partial shut-down on State contracts occasioned by the State's failure to pay their obligations in cash. It is therefore agreed that if and when a claim for damages is allowed the matter of the amount due you will be equitably adjusted between us after the collection has been made.

"It is agreed that you are to have the option of accepting Louisiana Highway Commission warrants in full for the amount due you, or to accept one-half the amount due you in La. Highway Commission warrants, the other half to be paid 80% in cash and 20% in Participation Certificates as previously issued by the Hibernia Bank & Trust Company. It has been agreed that in making final settlement with you on this contract and in order to obtain, if necessary, the approval of the Union Indemnity Company, we may make payment to them as specified above the amount due you and accept their receipt as full clearance.

"It is agreed that you are to pay demurrage assessed against R. B. Tyler Company at Sand Pit Spur, La., on the basis of the demurrage tariff.

"It is also agreed that you will make allowance for the third coat of paint yet to be applied on the handrails on bridges on proj. 4906.

"It is agreed that we will pay all liens now standing against these jobs that you okeh and send to us, before making a final settlement.

"It is agreed that final settlement in accordance with this letter shall be made either to you or the Union Indemnity Company, as we decide, on or before August 15th, 1932.

"Very truly yours,

"R. B. Tyler Company

"G. P. Wilson,

"General Superintendent.

"Accepted 7/30/32,

"Midland Construction Company By Ross Wills, President."

A compromise is a contract, and, to have the force of things adjudged, it must be perfect and complete in itself, and nothing left for ascertainment by parol proof. Lampkins v. Vicksburg, S. & P. R. Co., 42 La. Ann. 997, 8 So. 530; Francois v. Maison Blanche Realty Co., 134 La. 215, 63 So. 880, Ann. Cas. 1916B, 451.

" 'A thing adjudged is said of that which had been decided by a final judgment, from which there can be no appeal, either because the appeal did not lie, or because the time fixed by law for appealing is elapsed, or because it has been affirmed on appeal.' Rev. Civil Code, art. 3556, No. 31. * * *

"There is no precept of the law which requires evidence to support an act of compromise. This would, of itself, destroy its effect as a transaction. It could not then be said to have a force equal to the authority of things adjudged. It would then be deprived of its character as an unappealable judgment, and reduced to the rank of conventional obligations and cumulative contracts." Calhoun v. Lane, 39 La. Ann. 606, 2 So. 219, 226; Upton v. Adeline Sugar Factory Co., 109 La. 676, 33 So. 725.

A mere inspection of the instrument pleaded as a compromise by defendant shows that it does not fix, as to the settlement of state project No. 4906, any sum of money to be paid by either party to the other, but that is left to be ascertained by parol proof. Evidence is required to support the alleged com-promise, which is based largely upon things to be done thereafter.

It is not legally possible that such an agreement should be regarded as an unappealable judgment, since no fixed sum to be paid is stated therein, and, being deprived of this character, the agreement is reduced to the rank of a mere commutative contract, and is controlled by the laws of conventional obligations governing such contracts.

The plea of res adjudicata, therefore, is not well founded.

We do not hold that it is necessary that the parties to a compromise should agree to a payment in cash, in settlement of the differences between them. Nor are we to be understood as holding that they may not agree to perform some act in the future.

On the contrary, as said in Daley v. New Orleans Ry. & Light Co., 133 La. pages 280 and 281, 62 So. 903, 906: "The idea that parties could not adjust their differences by an agreement to pay money, but could do so only by the payment of cash, is of course not to be entertained for a single instant. The Code imposes no such condition, but, on the contrary, expressly says that the parties are free to adjust their differences in whatever manner they 'may agree on.' * * *

"In Thornhill v. Bank, 34 La. Ann. 1171, the consideration was mutual agreements to do things in the future.

"In Rabun v. Pierson, 23 La. Ann. 696, the consideration was an agreement to pay money in the future.

"It is needless to multiply instances where the consideration of compromises has been the doing of something in the future; our reports are full of them.

" 'The effect of a compromise,' says Mourlon on article 2052, C. N., p. 426, 'is to oblige each of the parties to do or to deliver the thing promised to be done or delivered.' "

In what way could either of the parties to the alleged compromise in this case compel the other to specifically perform it, when the mutual indebtedness is not fixed in the agreement, but must be left to litigation and ascertainment by parol proof?

In the cases cited above, the mutual things to be done in the future were specifically stated, and the amount of money to be paid was fixed in the compromise agreement. Parol evidence was not required in aid of the transactions.

In Calhoun v. Lane, 39 La. Ann. 594, 2 So. 219, the consideration was a promise or agree-

ment to pay a certain judgment and to make a donation.

The judgment to be paid necessarily fixed the amount due, and the property to be donated was specified. Recourse to parol proof was not necessary in either case.

The class of contracts known as compromises or transactions is clearly distinguishable from that in which equivalents are exchanged. By the very nature of the agreement, the intention of the parties is the avoidance of litigation, even at the expense of what belongs to them; but, in the case at bar, the agreement relied upon by defendant as a compromise does not contain the phrase "for preventing or putting an end to a lawsuit," and, in fact, does not do so.

(2) Under reservation of the plea of res adjudicata, and, in the event such plea should be overruled, defendant answered plaintiff's petition, praying that the suit be dismissed, and reconvened for judgment against plaintiff in the sum of $76,402.63, with legal interest thereon from judicial demand until paid.

It is therefore ordered that the judgment sustaining the plea of res adjudicata and dismissing plaintiff's suit be annulled and reversed.

It is now ordered that this case be remanded to the lower court and be reinstated upon its docket, and be proceeded with in due course and consistently with the views herein expressed.

It is further ordered that defendant, R. B. Tyler Company, pay the costs of this appeal, and that all other costs await final judgment in the case.

O'NIELL, C. J., dissents and hands down reasons.

O'NIELL, Chief Justice (dissenting).

I concede that the term "res judicata" is not an appropriate title for the plea of compromise, which the defendant filed in bar of this suit. The misnomer comes, perhaps, from the fact that article 3078 of the Civil Code declares that a transaction—meaning a compromise agreement—has the force or effect between the parties "equal to the authority of things adjudged." But that is a matter of no importance. The defendant's plea, which the district court sustained, was that, by the written agreement of compromise, dated the 30th of July, 1932, all of the differences, claims, and counterclaims, arising out of the contract between the Midland Construction Company and the defendant, R. B. Tyler Company, were settled to the mutual satisfaction of the parties; and that the matters complained of by the plaintiff in this suit, as successor to the rights of the Midland Construction Company, were settled and foreclosed by the compromise settlement.

The point which seems to be overlooked in the prevailing opinion in this case is that the plaintiff is not attacking the compromise settlement, or seeking to set it aside, or claiming any rights under the compromise settlement, but is ignoring the settlement, and is claiming under the original contract between the R. B. Tyler Company and the Midland Construction Company, as if no settlement between the parties to that contract was ever had.

According to the very language of the Civil Code, a compromise agreement, when reduced to writing, is not subject to collateral attack, and in fact cannot be set aside by either of the parties, even by a direct action, except on allegation and proof of fraud or error of fact. Rev. Civ. Code, art. 3078; Russ v. Union Cotton Oil Co., 113 La. 196, 36 So. 937; Massey v. W. R. Pickering Lumber Co., 136 La. 688, 67 So. 552; Oglesby v. Attrill, 105 U. S. 605, 26 L. Ed. 1186. As the article of the Code says of compromise settlements: "They can not be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected." There is no error of calculation or any other kind of error pleaded in this case.

I respectfully submit, therefore, that the district judge was right in dismissing this suit on the exception founded upon the compromise settlement, reserving to the plaintiff the right to sue upon any claim that the plaintiff might have by virtue of the compromise settlement, or to bring a direct action to set aside the compromise settlement.