## C. O. BLACK IMPLEMENT CO., Inc., v. SWINK.

### No. 6129.

Court of Appeal of Louisiana. Second Circuit.

July 5, 1940.

Rehearing Denied Aug. 1, 1940.

694

Jackson & Mayer, of Shreveport, for appellant.

Lee & Lee, of Shreveport, for appellee.

## TALIAFERRO, Judge.

Defendant purchased from plaintiff on May 10, 1938, a tractor and angle dozer (grader) for the price of $3,750, entirely on credit. To evidence the purchase price he executed to plaintiff two notes, one of which was for $622.06 due June 1st thereafter. By this suit, plaintiff seeks to enforce payment of this note with interest and attorney's fee as therein stipulated, less a credit of $100 as of July 1, 1938.

Answering, defendant admits the execution and delivery of the note, but denies that he made a payment thereon, and, for the reasons assigned by him, denies that he is now obligated to pay it. He avers that he purchased from plaintiff one International tractor with supplemental equipment and attachments in consideration of which he executed the note sued on; that before agreeing to make the purchase and execute the note, he required that plaintiff agree, as a condition precedent of the sale, not to negotiate the note; but that a short time thereafter, the exact date being unknown to him, plaintiff, in violation of the agreement, negotiated said note to the International Harvester Company; and, in addition, plaintiff failed to deliver to him the supplemental equipment and attachments; that shortly after the date of the note and prior to July 10th (date of the alleged payment thereon), he returned the tractor to plaintiff and disavowed the contract; that plaintiff accepted the delivery of the tractor and thereafter sold same. He further avers that the $100 was paid by him to plaintiff and by it accepted "in full and complete discharge and satisfaction of any claim or right which plaintiff had against defendant on account of said purchase or the note sued upon."

Defendant appealed from judgment for plaintiff in keeping with its demand.

Defendant is quite positive he would not have purchased the tractor and grader had not plaintiff agreed to personally carry the paper given to represent the price. Plaintiff's president, who dealt with defendant, is equally certain no such obligation was assumed on his part. The issue now is unimportant.

The note sued on was not negotiated to any one. The larger note was endorsed to the International Harvester Company. The date of the transfer is not shown.

The sale between the parties was closed on May 10th at Carthage, Texas, plaintiff's domicile. At that time the grader was attached to the tractor, but at defendant's request it was detached and held subject to his orders. The tractor was delivered to him the following day at Port Arthur, Texas, where he was engaged in construction work. He testified that a week or so thereafter he returned to his home in Bossier City, Louisiana, and there found a letter from the International Harvester Company advising that it owned the notes herein discussed; that he drove over to Carthage and protested to plaintiff against its action in transferring the notes in violation of their agreement, and told its president that the tractor would be returned and the contract canceled on his part; that immediately thereafter the tractor was brought back from Port Arthur by defendant's son and delivered to plaintiff's premises. He did not testify that plaintiff agreed to accept the return of the tractor and rescind the sale with obligations flowing therefrom.

Plaintiff admits that the tractor was returned to its place of business about one month after being purchased, but denies that this was done for the reasons assigned by defendant. Its president and others testified that the tractor was returned so that a wench could be affixed to it. The testimony leaves little or no doubt of the correctness of plaintiff's contention on this issue. The wench was not affixed because defendant was unable to pay cash for it and desired that plaintiff accept his note for the price and expense of attaching, and this plaintiff declined to do. The tractor and grader remained for an indefinite period on plaintiff's premises and while there

were seized by the International Harvester Company in suit to collect the larger note and enforce the lien securing its payment. In due course, the property was sold in this proceeding. The date thereof is not shown. This sale took from defendant the tractor and grader and left him owing the note held by plaintiff. Thereafter, plaintiff's president made repeated demands upon defendant for payment of the note, and, eventually, the $100 was paid. Whether this was simply a partial payment or was made to fully extinguish the note, presents the pivotal issue in the case. Defendant's counsel evidently share this same view as their brief solely discusses this issue.

Plaintiff objected to the admissibility of all parol testimony tendered by defendant to prove that the payment was made to extinguish the note on the ground that under the pleadings and defendant's contentions, the transaction terminating in the payment was a compromise of the differences between the parties, proof of which must be in writing. Art. 3071 of the Civil Code is relied upon to sustain this position. The testimony was admitted subject to the objection.

Defendant's position is that the transaction was a mere settlement or release of an obligation by paying less than its face amount, and that proof thereof is not restricted to written evidence.

If we accept defendant's version of facts as being true, he stoutly denied liability on the note on the ground that plaintiff had breached the agreement with him concerning the negotiation of the notes; that the transfer of the larger note to the International Harvester Company enabled it to enforce same promptly on its due date, which was done with resultant loss of the tractor and grader to defendant; and to settle the controversy over the question of liability, he contends plaintiff agreed to accept the $100. It is clear that plaintiff was pressing for payment of the note for several weeks before the payment was made. These facts clearly show that a controversy existed between the parties, sufficient to form the predicate for a compromise; and if the matter was adjusted in the manner and for the consideration contended for by defendant, the adjustment was in effect and nature a compromise, proof of which may only be made by writing, as is required by Art. 3071 of the Civil Code. Francois v. Maison Blanche Realty Co. et al., 134 La. 215, 63 So. 880, Ann.Cas. 1916B, 451. Therefore, in our opinion, the lower court properly ruled on the admissibility of the testimony offered to prove the compromise.

However, since this testimony was admitted subject to the objection and is in the record, we have decided to weigh and consider it in connection with defendant's position, eliminating the question of a compromise.

The pertinent facts, admitted and disputed, immediately preceding and coincident with the issuance and delivery of the check of $100 appear to be these:

Early in the morning of July 10th, Mr. Black, plaintiff's president, drove from Carthage to Shreveport and immediately went to defendant's office in the Levy Building. He was not there but was at his home in Bossier City. Black talked with him on the telephone and then drove to defendant's home and there they discussed the note. Exactly what was said about settling or paying the note is a matter of serious dispute between them. Defendant says that he informed Black that he should not have to pay the note and that Black stated that he was on his way to Chicago and needed $100, and if he would pay this amount he would accept it in full settlement of the note. Black is positive he made no such agreement, and that the amount was only intended as a partial payment. The amount was not then and there paid. Defendant telephoned over to his office and requested Mr. L. H. Carter, working therein, to prepare the check for plaintiff and that he (defendant) would come by and sign it. He did so and it was thereafter delivered to Black when he called for it. There is sharp dispute as to who actually handed the check to Black. Carter says that he did so, and that defendant had been gone some two hours when Black called for it. Black says that he and defendant went to the office together and that defendant gave him the check outside of the office. Carter is corroborated by the testimony of another gentleman then in the office. We think Black in error. It is of no importance which side is correct. Carter gave testimony as to what Black said about the alleged settlement when the check was delivered. Of course, this testimony would be worthless if it were shown that Carter did not deliver the check to Black.

Carter testified that in response to a question by him to Black when the check was handed to him, Black said, "it gets everything straightened up." The other gentleman in the office at the time corroborates Carter in this respect. This testimony has limited probative weight in support of the contention that a note, well worth its face value, was settled for one-sixth of that value.

[2] Defendant offered testimony to show that prior to the said payment, Black frequently visited and called defendant's office on the telephone in his efforts to collect the note or secure payments thereon, and that after the payment he ceased to do so. Black testified that his office mailed regularly statements to defendant asking for payment of the note and that he personally interviewed him for that purpose. This suit was filed six months after date of the payment. Silence and inaction for so short a time, if conceded, raise no presumption of the note's extinguishment.

The only positive testimony that plaintiff accepted the $100 in full satisfaction of the note is that of defendant. He is flatly contradicted by Black. In Linnan v. Linnan, 131 La. 535, 59 So. 981, where plaintiff sued on and was depending upon a settlement or adjustment, the court held: "Testimony of plaintiff alone contradicted by defendant as to a settlement of plaintiff's claim entered into with defendant held insufficient on which to pass a judgment."

Civil Code, art. 2232, reads: " * * * he who contends that he is exonerated [from an obligation], must prove the payment or the fact which has produced the extinction of the obligation."

The record discloses, in fact defendant admits, that his business is successful and prosperous. His credit is good. Plaintiff had sold him many thousands of dollars worth of equipment prior to the sale in question, and at date thereof held his note for $1,400, being part of the price of a truck. It is not reasonable to suppose that the holder of a perfectly valid note for over $600 would be willing to cancel and surrender it by the payment of one-sixth thereof. No good reason, business or otherwise, could be assigned for so doing. Testimony held to support such a contention should be unusually clear, positive and convincing.

Another circumstance weighing against defendant's position is that at no time did he demand return of the note after the $100 was paid.

Granting to defendant the benefit of all of the testimony adduced in his behalf, we are of the opinion that he has failed to prove his defense.

By answer to the appeal, plaintiff-appellee, calls to our attention that its corporate name is given in the judgment as C. O. Black Implement Company, whereas C. O. Black Implement Company, Incorporated, is its proper legal name, and prays for amendment of the judgment on this score to accord with the true facts. The point is well taken.

For the reasons herein assigned, the judgment appealed from is amended so as to show plaintiff's corporate name to be "C. O. Black Implement Company, Incorporated", and as thus amended, it is affirmed, with costs.